May it please the court. I'm Mark Little on behalf of the plaintiff's appellants and I'd like to reserve five minutes for rebuttal. Under Ex parte Young, a plaintiff may sue an officer of the state to enjoin the enforcement of an act alleged to be unlawful so long as that officer has some connection to the enforcement of the act. This court's application of that standard in three cases, Macinis, You, and Brown, all demonstrate that Ex parte Young imposes only a modest burden and that it is applied pragmatically with its remedial ends in mind. Macinis is particularly relevant here. There, this court held that the Arizona Secretary of State's role in promulgating binding directives to local election officials far exceeded the sum connection with enforcement requirement under Ex parte Young. Macinis provides the blueprint for resolving this case because like in Macinis, here the SBCC members also promulgate binding non-discretionary directives to local officials who then must follow them as a matter of state law. Under Macinis and frankly under this court's other question is enforcement. What enforcement capacity do they have? So I think the lesson from Macinis is that enforcement means something more than the, you know, last link in the chain. In Macinis, if we were taking the most narrow view of enforcement, it would be the local election officials who were printing the ballots. But this court said, no, look, ordering someone, giving a legally binding order to take an act, here it was the Secretary of State or rather there it was the Secretary of State ordering the local officials to print the ballots in a certain way and again, they had to follow that as a matter of state law. That's also enforcement. And let me answer, you know, I'm just curious what, so the council promulgates the rules, right? I guess I don't know what to call it. Yes, your honor. Or building code. Building code, right? The building code, I gather, is binding on the local officials. Yes, your honor. Correct. And so the local officials apply the building code to applications that come in and do all the processing, approve applications and whatnot. Yes, your honor. Building codes. Okay, but what does the council do if the local officials don't do it the way they think it should be done? Do they have any power to do anything? Right, what your honor is getting at, I believe, is whether there's any kind of supervisory function, whether they can ensure that the local officials follow their directives. And I want to make two points here. First, in Macinas, there's no indication at all. In fact, I think it's fairly clear that the Secretary of State there didn't have any powers to hire and fire or anything like that over the local election officials and yet that legally binding order was enough. As to what would happen... Well, there was that manual that she produced, right? Oh, absolutely. It was a binding, the directives in the manual were binding. Yes, they were binding. But if local election officials just said, this is great, this is a binding order, but I'm just not going to follow it, there's certainly no indication from that case. And I believe the actual facts are that the Secretary of State, it's unclear if she could have compelled the local officials to follow it. Now, again, that is much the same here. I think everyone agrees that the building code is binding that local officials have to follow. As to practically what would happen if some local building official just decided to do its own thing, to kind of flaunt state law, I think it's pretty clear what would happen in that instance and that's that the Attorney General would bring suit against that local official, compelling them to follow state law. The Attorney General certainly done this before in matters where a local county had an ordinance that didn't follow state law. That's the Department of Ecology versus Waukee-Ockham County case that we cite in our reply brief on page 16. And there's every indication that would happen here. But I think... How do we know that? Well, in terms of how we know it, it's kind of a commonsensical analysis. I mean, Washington State Energy Code is an important policy of the state of Washington. The idea that the Attorney General would simply stand idly by and let it be flaunted is somewhat strange credulity. And you don't have to consider this in a vacuum. I mean, we laid this out in our opening brief that what we think is going to happen. The Attorney General doesn't dispute any of that. In fact, stays very silent on what actions he would take in that process. But I want to point out that even if the Attorney General wouldn't do anything, and even if this court, you know, thinks our arguments as to the Attorney General might be weaker, that really doesn't have anything to do with our arguments against the SBCC members. There are really two groups of defendants here, the SBCC members and the Attorney General. And again, as for the SBCC members, I really think the only distinction that the other side has raised here with Messinas, which again, I think is a very on-point case, very factually analogous, is that in Messinas, it was a challenge to a statute. In here, it's a challenge to a regulation. That is true. That is. Well, not quite. I mean, the district court made this promulgation versus distinction. What's your response to that? Sure. So in Messinas, I will get to your honors question, but if you'll give me a little latitude. I think the key holding there is that in terms of enforcement, just what is enforcement, we know that issuing binding orders to local officials to take an act of violence federal law. Make that distinction. Right. And that's what I'm getting at here is that even if you look at Ex parte Young, just the key case itself, the test is some connection to enforcement. The test isn't and no promulgation. Messinas doesn't talk about promulgation or act like that's important. I don't know of any case that does. And in fact, I believe my friends on the other side concede in their brief that they are not saying that you cannot have a dual promulgation and enforcement role. And again, I don't know why that wouldn't be the case, because I can imagine all kinds of scenarios in which statewide officials issue binding orders that they have some discretion over and that would qualify as enforcement under Ex parte Young principles. I think you're right that you're asking for only a modest extension of Messinas. And my problem is that I think Messinas is wrong. It's just it was overbroad. It is not in the heartland of what Ex parte Young is about. And so tell me why Messinas is right and why should we should be granting this modest extension. So I guess first first runner, I I honestly don't think that this requires any extension of Messinas just on on his points. But as as to why Messinas was right, I think the notion that ordering someone else to violate federal law doesn't have any connection with that act that violates federal law. That seems a little strained. Well, I mean, the problem is Ex parte Young is about enforcement. Right. That means being able to have some accountability over the people below you here. You know, the secretary had no has no accountability over the people below her. Well, I don't think it's it's accountability. And I hate to keep harping on Messinas. And I promise I'll try to keep it to a minimum. But but they are just want to be very clear. The Arizona secretary of state and the local election officials, there were no lines between them. And that's why I understand. I understand your honor thinks it's wrong. And of course, everyone knows that that the panel has has to follow the cases of the court. But I think also a distinction that but I want you to. Yes. Yes. No, I understand. But but I think practically, again, whether kind of there's this power to hire and fire or that kind of thing, just the act of enforcing a law under Messinas, under all and not just Messinas, I mean, frankly, under you, under Brown, it has never been kind of the last link in the chain of enforcement, the closest connection to enforce anything like that. It's always been a some connection requirement. And so I think the the key notion, frankly, the only notion that your honor would need to get comfortable with here is is that enforcement means more than kind of boots on the ground doing things. And if I'm ordering someone to do those things, that's also part of the enforcement, some connection tests. I mean, you could apply it to the legislature. Right. And no one thinks that we could use Ex parte Young to enjoin the Arizona legislature or the Washington legislature. So you you are your honor is absolutely correct that it's partly young, does not apply to the legislative branch of the state governments. That's a bright line rule. Right. I mean, look, connection test kind of suggests that it would. Well, but the some connection test was was promulgated in the context of state executive branch officials. I mean, I think the language in Ex parte Young limits itself to state executive branch officials, because, look, while agencies often do things like making law, I mean, what they're really doing is enforcing law. The executive branch enforces law. Sometimes they enforce law by just issuing orders. Sometimes they do it through a bit more of a formal process with more discretion. Those things might be called rules or regulations, but those are enforcement of law. And frankly, the Ex parte Young test shouldn't turn on, you know, what the executive branch calls its orders, whether they're just kind of preemptive orders or or regulations. And nor should it should it turn on this power to hire or fire. I mean, the fact that under state law, what the statewide official says goes is a pretty close connection, frankly, more than just some connection. Unless the court has other questions, I'll save my remaining time for rebuttal. Thank you, counsel. May it please the court. July Simpson, on behalf of the Washington State Building Code Council and the attorney general of Washington, Ex parte Young requires suit against the enforcer. Here, state law explicitly provides the counties and cities are the sole enforcers of the energy codes. The council promulgates but does not enforce the codes. If the plaintiffs want to bring this challenge to those codes in a suit against the council, the proper forum is in a I'd like to make. Could they also see the local officials? Yes, they could do that. Your honor, your honor. And they're not entitled to any sovereign immunity, right? The municipalities, they are not. However, the attorney general and the council are. As an initial matter, I'd like to make three factual points about what the council does and does not do when speaking about the council. First, the council is a quasi legislative body that does not approve or deny building permits. They do not question about that. Are you how come you didn't claim some sort of legislative immunity, if that's true? Can you repeat that? There is a doctrine of legislative immunity that you can't sue that there's some on top of sovereign immunity. There's a you know, there's some immunities for legislative branch members. If they're a quasi legislative organization, why did they claim that? I suppose it's possible that they could have done that. In this instance, what made the most sense in terms of an immunity to apply is the immunity of excuse me, of the 11th Amendment, which applies to executive branches where the council is housed in an executive branch. The council is a slightly unique agency. You know, the there was discussion previously here at the podium about how there are agencies that do promulgate rules and also enforce rules. However, here, that is not the case. What we have here is we have an agency, the council that only promulgates the rules. And then the state statute explicitly states that it's the local officials that do enforcing of those rules. And frankly, when we think about the local county officials enforcing those rules, what we talk about, they have significant penalties when they enforce. They can issue stop work orders, fines, even forced demolition. And the council does not oversee or supervise their decisions. And they don't have any recourse. They can issue opinions on how to interpret the regulations, correct? They can issue non-binding opinions. So if they issued an opinion and the local municipality just disregards it, the council can do nothing about it? That's correct, Your Honor. I would like to turn to the discussion of Macinus. Council did speak broadly about Macinus. And Judge Bumate, you mentioned that you thought the Macinus was wrong. And what I would like is to provide a way to look at Macinus and those that may assist this court. When we look at Macinus and you and the Brown case, what we're looking at is a distinct line of cases because those are cases that challenge statutes that don't typically give rise to enforcement proceedings. And that comes directly from the U case. And in these types of cases, the courts use the legal fiction of ex parte young to allow suit to state officials who give effect to the challenge codes. But by contrast, this case falls comfortably within a different category of cases where there are clear enforcement proceedings and clear enforcers. In Macinus, if one of the county recorders disobeyed the manual, what would happen? It's unclear there. However, what we're talking about there is they challenged a statute. They challenged the order that candidates need to appear on ballots. There's no discretion there. The statute says the candidates have to appear in a certain order. The manual then enforced that. It had no enforcement mechanism, right? There has to be some way to make sure the county recorder follows the law. It is a little difficult. Perhaps what I intended to say is that they don't typically give rise to proceedings as opposed to, say, a criminal case or here where you have a building code application and then the code is applied and enforced to that particular application. In Macinus, if a local official declined to follow the manual or the rule, the statute, I gather some suit could be brought in the local superior court. I believe, Your Honor, that in that case, actually, the only form was criminal. There was criminal enforcement provisions for failing to follow the Arizona state ballot order statute. But like I said, this is not the type of case that arises that gives that's the stereotypical ex parte young enforcement action where there's clear enforcement. Let's assume that some Democratic county in Arizona that just declined to, you know, just set the ballot out the way they wanted it and didn't follow the statute. I imagine the Republican Party could go to court and try to get an injunction to compel the county clerk to comply with the law. In that case, it is possible that, again, in that situation, that the court could use the legal fiction of ex parte young to allow suit to proceed against certain state officials who give effect officials. Then in that case, the county officials would not have 11th Amendment immunity. And there are that statute allowed for criminal sanctions against county officials that failed to follow. But that's not the case here. Here, what we have is a case that comfortably falls within the category of cases where it's enforced and there is an enforcer. A lot of these cases include Planned Parenthood of Idaho, Snook, Mendoza. These are all cases where there were clear enforcement proceedings and entities that enforce the law. And here we have a clear enforcer. That's the local building code officials, not the defendants. What about the attorney general? The attorney general does not enforce the energy codes. Again, that's entrusted to the local officials. And the attorney general does not. Is the attorney general precluded from, I mean, is he just can't get into this game? I think what your honor may be speaking, referring to is the city of Sunnyside, which is about the discretionary authority to file a lawsuit in a matter of common concern. And it merely states that the AG has discretionary authority when there's a cognizable common law or statutory cause of action. But this is no more than a generalized duty to enforce, which is not enough under Ex parte Young. In fact, Ex parte Young specifically contemplated this very scenario where an attorney general is sued. And it's stated that you cannot sue the attorney general just because he might represent the state in litigation involving enforcement of the statute. The attorney general has nothing more than discretionary authority. Ex parte Young provides relief against the enforcement of laws and not their promulgation. Let me just, I want to make, could the attorney general enforce it? Attempt to enforce it? Well, the plaintiff. I mean, suppose, suppose, you know, the attorney general, you know, just thought that the state policy of, of trying to reduce the use of gas was, you know, needed to be enforced. Could the, could the attorney general say, you know, if any local entity doesn't, doesn't comply, I'm going to go after him. Well, Your Honor, again, in city of Sunnyside, that did state that there, that the attorney general does have discretionary authority in some instances. And in those situations, they would need to, the plaintiffs would need to point to some cognizable common law or statutory law cause of action. And they simply have not done so in this case, which makes them not the appropriate, the makes the attorney general, not the appropriate defendant in this particular case under these particular circumstances. And the plaintiffs have not shown any real likelihood that the attorney general will take any action, anything beyond mere speculation. And also briefly going back to Macinus, as that was a point, points that were made specifically, Macinus did not hold that there's any lack of discretion anytime the rural promulgator is stripped of their 11th amendment immunity. And plaintiffs do want to broaden the meaning of strip a quasi-legislative agency without enforcement authority of its 11th amendment immunity. And this is not what Ex parte Young intended. And it's not how waivers of sovereign immunity work. If there are no further questions, then in conclusion, this district court properly, the district court properly dismissed the counsel and the attorney general due to its 11th amendment immunity. And this court should affirm. Thank you. Thank you, counsel. A few points in rebuttal, your honors, but of course, feel free to interrupt me with questions. First, I want to talk about this kind of floodgates or extension of Macinus argument. Look, there are very clear lines here. It's only the executive branch can't go to the legislative branch. I think that takes a lot of the kind of Ex parte Young going to swallow everything concern off the table. Second issue here is really what Macinus did is it's a fairly narrow holding, frankly. It's when a statewide official issues orders that are binding under state law and that local officials that leave local officials without discretion to avoid violating federal law, as in it is a order that under state law, they have to violate federal law. A lot of regulations and a lot of frankly, orders from statewide officials are going to leave tons of discretion to local officials. In fact, when you look at most orders from the governor just broadly about how to enforce laws, they often leave quite a bit of enforcement discretion with local officials. Those are not going to work under this theory because the key is, is this binding lawful order that I have no choice but either violate state law, of course, or comply with. Second, Macinus, it's not some aberration from this court's case law. I mean, this court has a fairly long tradition of having a broad conception of Ex parte Young. The Yu case and Brown case, I won't belabor the court with the facts of those again. They're in a briefing, of course, and my point on those cases isn't that they're factual analogs. I think Macinus is a close factual analog, but Yu and Brown, it's not so much that they're clear factual analogs, it's that they show the flexible, pragmatic approach the court takes to Ex parte Young. And again, I think when you kind of add that general approach to Macinus, even Macinus, I'm not sure, advanced this course that much more in that direction than what it already was. Third point, there was some talk about, you know, what else we could do, could we sue all of the localities and all of that. And I want to be clear, you know, we have, we believe we have a right under Ex parte Young to seek vindication of our federal rights in federal court. It is true that we could bring suit against, you know, 100 plus localities. That is less than ideal for numerous reasons. It's bad for us and that would multiply costs and make it much more complicated. Could you do a defendant class action? Well, I'm not sure in this case if we could, because there aren't, there are about 100 some odd defendants. It's not as if we have, you know, 20,000 or something like that. And so I'm not sure if numerosity would be satisfied there. But if you won in one case, wouldn't it, you peel up and then they'll be binding on, I don't know how the state courts work there, but. Sure. So if we sued one of the localities in federal court, of course, that injunction would only be against that locality. You are correct that, well, it wouldn't even have presidential effect unless and until it got to this court, right? Because district court orders don't have a presidential effect. In that instance, we would have a binding precedent. Well, I mean, they're somewhat authoritative. I mean, you know. Oh, no, no, no. I do not mean to suggest that. You don't want to dismiss. I do not mean to suggest that we should. You don't want to say district courts, you know, they don't really mean anything. I am talking in terms of legally binding presidential effect, which, you know, my clients would want to feel comfortable. And frankly, what they would really want is an injunction against the parties. And really, there is no way to obtain an injunction against all the localities without suing them all. And of course, needless to say, that's a complicated endeavor, but not just for us. It's bad for the courts, and it's bad for these localities, many of which are small localities, many of which don't like the energy code, and frankly, don't want to enforce it. So you put really everyone in a bad position. This is the mechanism that, again, we think is and we think also just makes the most sense in terms of an efficient adjudication of our claims. And I guess lastly, briefly on the attorney general point, this court's decision in long versus Van de Kamp says, you know, what you need to show is something beyond, hey, the AG is the chief law enforcement officer of the state. That's not our argument. Our argument is that in the words of this court, there's a real likelihood that the attorney general would take action to enforce this law. And again, I will simply point out that even now, the attorney general has not addressed that issue. And that's not, to be clear, the attorney general taking this action and trying to enforce Washington state law, nothing's wrong with that. It makes perfect sense. And that's exactly what the attorney general is going to do, which is why the attorney general is also a proper ex parte young defendant. Unless the court has further questions, I'll yield the remainder of my time. Thank you, counsel. This case is submitted.
judges: PAEZ, BUMATAY, Baggio